## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| SHERRY McILWAIN, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-10-2293 |
| | § | |
| SAN JACINTO COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER GRANTING
## DEFENDANTS' SECOND MOTION TO DISMISS

On December 16, 2011, the parties consented to proceed before a United States magistrate

judge for all purposes, including the entry of a final judgment, under 28 U.S.C. § 636(c). (Docket

Entries #111, #112). In this case, Plaintiffs Sherry McIlwain ("Sherry"), Donald McIlwain

("Donald") (individually and as representative of the Estate of Marc Bryant McIlwain ("McIlwain,"

"Decedent")), and Weslie Alexandra Brimer ("Brimer") (as natural tutrix of Kayden Bryant

McIlwain) (collectively, "Plaintiffs") seek damages for civil rights violations that allegedly led to

the death of Marc McIlwain.   Pending before the court is a motion to dismiss, or for summary

judgment, that was filed by Defendants San Jacinto County ("the County"), James L. Walters

("Walters"), Thomas J. Bartley ("Bartley"), and Carl Jones ("Jones") (collectively, "Defendants").

(Defendants' Second Motion to Dismiss for Failure to State a Claim and/or for Summary Judgment

["Motion"], Docket Entry #126).  Plaintiffs have responded in opposition to the motion.  (Plaintiffs'

Memorandum in Opposition to Defendants' Second Motion to Dismiss for Failure to State a Claim

and/or for Summary Judgment ["Response"], Docket Entry #132).  Plaintiffs also seek a voluntary

dismissal of Kenneth R. Burchett ("Burchett") and Doreen Donnelly ("Donnelly") as defendants in

this action. (*See* Plaintiffs' Fourth Amended Complaint ["Complaint"], Docket Entry #109, at 3).
After considering the pleadings, the evidence submitted, and the applicable law, it is ORDERED that
Defendants' motion to dismiss is GRANTED, that Plaintiffs' voluntary motion to dismiss Burchett
and Donnelly is GRANTED, and that this case is DISMISSED, with prejudice.

**Background**

On May 21, 2009, Marc Bryant McIlwain was arrested for a variety charges, including
possession and possession with intent to distribute controlled substances. (Response at 2). He was
detained in the San Jacinto County Jail, where he was placed in the general population, in a cellblock
deemed "medium/maximum security." (*See id*. at 2-3). During the initial days of his incarceration,
Plaintiffs claim that McIlwain tried to kill himself, by cutting his wrists. (*Id*. at 4; Complaint at 5).
They also contend that Defendants were aware of the incident, but did not place him on "suicide
watch," and did not ensure that he was given the proper dosage of his prescribed medication.[1] (*Id*.).

On July 11, 2009, McIlwain was housed in solitary confinement. (*See id*. at 15; Response
at 2, 13-14). At 4:30 p.m. that day, Legacy EMS was called to treat McIlwain for reported breathing
trouble, or "anxiety." (*Id*. at 14-16; Motion at 29-31 & n.7). According to the EMS report, McIlwain
claimed that he was suffering an anxiety attack, and that "all he wanted was a bag to breathe in."
(*Id*.). The paramedics treated McIlwain on site, and then attempted to take him to the hospital for
further treatment. (*Id*.; Complaint at 14-16; Response at 3). McIlwain refused, however, telling the
paramedics that he "was feeling fine now." (*Id*.). In fact, McIlwain signed a form confirming his
refusal of further treatment. (*Id*.). According to Plaintiffs, once McIlwain was returned to his cell,

---

[1] While in jail, McIlwain was prescribed, and administered, sertraline, which is an anti-depressant
medication. (Complaint at 10).

he attempted to communicate with a fellow inmate, as follows:

> [McIlwain] printed a telephone number and held it up to where it could be seen by an individual in another cell, Kaleb Watson ["Watson"].  Decedent also wrote that he wanted Watson to tell them what happened to him.

(Complaint at 15).  Plaintiffs do not identify "them," or the information McIlwain allegedly wished to have communicated to "them."  (*Id*.).  But they allege that the following events took place later that same day:

> the McIlwain's [sic] received a telephone call from Mr. Watson's great aunt who advise [sic] Decedent had a seizure, that it took 30 minutes to get the paramedics to the jail to treat him, that he was "ok" and that he loved his parents.[2]

(*Id*.).

According to records kept by the Jail, on July 11, 2009, routine checks on McIlwain and the other inmates were performed approximately twice every hour from 7:00 a.m. to 7:30 p.m.  (M&R at 4).  The records also show that McIlwain was administered his medication at 5:00 p.m. that day.  (*Id*.).  At approximately 11:00 p.m. that night, McIlwain was found dead in his cell.[3]  (*Id*. at 4; Complaint at 4-5).  Paramedics were immediately called to the jail, and they confirmed McIlwain's death, noting that his body was still warm.  (*See id*.; Response at 3).

---

[2]  The EMS records, which were addressed in the court's previous order of dismissal, show that the paramedics got to the jail within six minutes of the call, and that the medical personnel reached McIlwain three minutes later.  (Motion at 30 n.7; Memorandum and Recommendation on Motion to Dismiss ["M&R"], Docket Entry #93, at 20-21).

[3] Throughout this litigation, the parties have maintained that, when found, the deceased was on his knees, with something wrapped around his neck and tied to a ceiling vent.  (Complaint at 4; Response at 3).  In their latest pleading, Plaintiffs elaborate on these allegations, as follows:

> [McIlwain's] body was found in a suspicious/questionable position with his hands bound to his front and his knees and feet on the floors of his cell showing that he was sitting upright and next to personal belongings that were not disturbed or scattered by any struggle that should have taken place in self preservation once he became deprived of oxygen.

(Complaint at 4-5).

3

On July 13, 2009, Dr. Tommy Brown ("Dr. Brown"), a forensic pathologist, performed an autopsy on McIlwain's body. (M&R at 4). Dr. Brown ruled the cause of death was "[a]sphyxia due to hanging," and that the manner of death was "[s]uicide." (*Id.*; *see* Complaint at 11-12). Dr. Brown also ordered a toxicology report, which revealed that McIlwain had 990 nanograms per milliliter ("ng/mL") of sertraline in his bloodstream at the time of his death. (*Id.*; M&R at 4-5). The toxicology report stated the following:

> Toxicity has been reported at average concentrations of 245 ng/mL. A fatality was reported with a sertraline concentration of 610 ng/mL.

(Complaint at 11). On July 15, 2009, Dr. James Traylor, Jr. ("Dr. Traylor"), an anatomic pathologist,[4] and Dr. Xiaohong Wang ("Dr. Wang"), also a pathologist, conducted a second autopsy, at Plaintiffs' request. (M&R at 5). Dr. Traylor concluded, "Given the historic and investigative materials, the cause of death is considered to be hanging with the mechanism of death being asphyxia." (*Id.*). Dr. Traylor ordered his own toxicology report, which also revealed high levels of sertraline in the decedent's blood. (*Id.*; Complaint at 11). The doctor reported that the level of sertraline documented in both autopsies "is markedly elevated and within the toxic range." (*See id.*) Dr. Traylor then made the following comment:

> Since the individual was incarcerated and distribution of medication is tightly controlled the toxic level of sertraline demands explanation.

(*Id.*).

On June 28, 2010, Plaintiffs filed this lawsuit under 42 U.S.C. §§ 1983 and 1988, claiming that McIlwain's death resulted from civil rights violations committed by San Jacinto County and by

---

[4] A "pathologist" is "a physician specializing in the study of disease." THE FREE DICTIONARY, *http://medical-dictionary.thefreedictionary.com*. An "anatomic pathologist" has a particular focus on the "study of changes in the function, structure, or appearance of organs or tissues." *Id.*

Walters, Jones, Bartley, Burchett, and Donnelly, in both their official and their individual capacities.[5] (Plaintiffs' Original Complaint, Docket Entry #1).  On an earlier motion, the court dismissed all actions against the individual Defendants under Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim.  (M&R at 21).  With leave to amend, Plaintiffs filed their Fourth Amended Complaint.  In this new complaint, Plaintiffs allege that San Jacinto County, and Walters, Jones, and Bartley, in their individual capacities, engaged in conduct that deprived McIlwain of his rights under the United States Constitution.  (Complaint at 1-17).  In particular, Plaintiffs claim that Defendants knew or should have known that there was a risk that McIlwain would attempt suicide, but failed to take adequate measures to prevent it.  (*See id.*).  Plaintiffs also "expressly dismiss Kenneth R. Burchett and Doreen Donnelly as Defendants."  (*Id.* at 3; Motion at 4 n.3).

On June 28, 2012, Defendants filed their second motion to dismiss.  They argue, first, that, in large part, Plaintiffs' Fourth Amended Complaint "duplicates their Third Amended Complaint." (Motion at 16-20).  They then assert that none of the changes or additions that Plaintiffs have made to their pleadings is sufficient to state a constitutional claim, or to avoid the qualified immunity bar. (*Id.* at 20-32).  And, finally, Defendants contend that Plaintiffs' claims against San Jacinto County fail because they have not shown that there is an official policy in place that led to any constitutional violations.  (*Id.* at 32-33).  In the alternative, Defendants move for summary judgment.  (*Id.* at 33-34).  On August 15, 2012, Plaintiffs responded in opposition to Defendants' motion.  Having

---

[5] On November 3, 2011, the court dismissed Plaintiffs' claims against Walters, Jones, Bartley, Burchett, and Donnelly in their official capacities, for failure to state a claim.  (M&R at 20-21; Order Adopting Magistrate Judge's Memorandum, Docket Entry #106).  Plaintiffs initially sued two additional defendants, Dr. Robert Woodrome, a San Jacinto County Jail physician, and Lisa Marie Everitt McGurk, a nurse at the Jail.  (Plaintiffs' Third Amended Complaint, Docket Entry #25, at 3).  However, Plaintiffs later dismissed those claims.  (Dismissal of Action, Docket Entry #92; Order on Dismissal of Action, Docket Entry #107).

considered the pleadings and the applicable law, the court finds that Plaintiffs' claims must be dismissed for failure to state a claim.[6]

**Standard of Review**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss an action for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Limitations periods "may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.* 339 F.3d 359, 366 (5th Cir. 2003); *see Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007).  In considering a Rule 12(b)(6) motion, the court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)); *accord In Re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012). The court, however, need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009). Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)); *accord Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012).  A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.*

---

[6] Because this matter can be resolved as a motion to dismiss, it is unnecessary to consider the alternative motion for summary judgment.

(quoting *Iqbal*, 556 U.S. at 678). The standard of plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678-79; *accord Wilson*, 667 F.3d at 600. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

## Discussion

Plaintiffs bring their claims under § 1983 of the Civil Rights Act of 1871, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983; *see Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724, 727 n.3 (5th Cir. 2009). Section 1983 is clearly meant to deter government officials "from using the badge of their authority to deprive individuals of their federally guaranteed rights, and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254-57 (1978)). It should be emphasized, however, that the civil rights statutes are not themselves the source of substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). Instead, these statutes merely provide a method for vindicating federal rights that are conferred elsewhere. *See id.* In their § 1983 claims, Plaintiffs allege that Sheriff Walters, Bartley, and Jones, in their individual capacities, and San Jacinto County violated McIlwain's rights under the Due

7

Process Clause of the Fourteenth Amendment.[7] (Complaint at 1, 4-17). In their motion to dismiss, Defendants address the following:

> Whether the Fourth Amended Complaint states any claim under 42 U.S.C. § 1983, against the Defendants, for which relief can be granted for alleged violations of Plaintiffs' due process rights under the Fourteenth Amendment, and whether any such claims should be dismissed pursuant to Rule 12(b)(6).

(Motion at 14). To minimize confusion in this memorandum, and because San Jacinto County did not join the original motion to dismiss, the court will first address the claims against the individual Defendants.

### Claims against Walters, Bartley, and Jones

As in their original motion to dismiss, the individual Defendants argue here that they are protected from this suit by the doctrine of qualified immunity. (*Id*. at 20-32). That doctrine protects officials in the performance of their discretionary functions "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)); *accord Lockett v. New Orleans City*, 607 F.3d 992, 997 (5th Cir. 2010). In essence, the doctrine protects "'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, ___ U.S. ___, 131 S. Ct. 2074, 2085 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In determining whether officials are entitled to the protection of qualified immunity, a court must consider two factors. *See Jennings*, 644 F.3d at 300; *Freeman v. Gore*, 483

---

[7] In their response, Plaintiffs also claim that Defendants violated McIlwain's rights under the Eighth Amendment. (Response at 7-12). As the court explained in its previous memorandum, however, McIlwain's rights are governed by the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, due to his status as a "pretrial detainee." (M&R at 9-11). For that reason, the court will analyze Plaintiffs' claims under the Fourteenth Amendment, as Defendants have done in their motion.

F.3d 404, 410 (5th Cir. 2007). The first factor is whether "the official[s] violated a statutory or constitutional right." *al-Kidd*, 131 S. Ct. at 2080; *accord Jennings*, 644 F.3d at 300. The other factor examines whether "the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 131 S. Ct. at 2080; *accord Jennings*, 644 F.3d at 300; *Stotter v. University of Tex. at San Antonio*, 508 F.3d 812, 823 (5th Cir. 2007). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson*, 555 U.S. at 236; *see al-Kidd*, 131 S. Ct. at 2080; *Jennings*, 644 F.3d at 300 n.3. And, when faced with a qualified immunity defense, "a plaintiff cannot be allowed to rest on general characterizations," but, instead, "must speak to the factual particulars of the alleged actions." *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999).

In this case, the court need only look to the first prong to determine that Walters, Bartley, and Jones are protected by the doctrine of qualified immunity. Plaintiffs claim that these Defendants violated McIlwain's constitutional rights under the Fourteenth Amendment. (Complaint at 1, 4-17). In particular, they allege that Defendants knew or should have been aware that there was a risk that McIlwain would kill himself, and that they failed to take adequate measures to prevent it from happening. (*See id.*). "A pre-trial detainee may bring a Fourteenth Amendment due process claim in a Section 1983 action either 'as an attack on a condition of confinement or as an episodic act or omission.'" *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 352 (5th Cir. 2012) (quoting *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009)); *accord Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644-45 (5th Cir. 1996). In their Fourth Amended Complaint, as in their previous complaint, Plaintiffs appear to make arguments under both of these theories.

9

*Conditions of Confinement*

Plaintiffs allege that Defendants subjected McIlwain to unconstitutional conditions of confinement, which ultimately lead to his death. (*See* Complaint at 4-17). It has long been established that "[a]lthough the constitution 'does not mandate comfortable prisons,' conditions of confinement 'must not involve the wanton and unnecessary infliction of pain.'" *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347-49 (1981)); *see Duvall v. Dallas Cnty.*, 631 F.3d 203, 206-07 (5th Cir. 2011). In the case of pretrial detainees, "conditions of confinement ... that amount to 'punishment' violate the Constitution." *Id.* "Punishment" is "usually the manifestation of an explicit policy or restriction." *Shepherd*, 591 F.3d at 452 (citing *Scott*, 114 F.3d at 53 n.2); *see Duvall*, 631 F.3d at 207 (holding that "an avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition, practice, rule, or restriction"); *Hare*, 74 F.3d at 644 (same). However, in some cases, the impermissible punishment "may reflect an unstated or *de facto* policy." *Shepherd*, 591 F.3d at 452. In *Shepherd*, the Fifth Circuit explained that a *de facto* policy may be found in a pattern of conduct that is "'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Id.* (quoting *Hare*, 74 F.3d at 645); *see Duvall*, 631 F.3d at 207. The Fifth Circuit cautioned, however, that proving the existence of a *de facto* policy "is a heavy burden, one that has rarely been met in our caselaw." *Shepherd*, 591 F.3d at 452. The Fifth Circuit has also found that, if the challenged condition "'is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.'"[8] *Duvall*,

---

[8] The Fifth Circuit has recognized that "'the reasonable-relationship test employed in conditions cases is functionally equivalent to the deliberate indifference standard employed in episodic cases.'" *Duvall*, 631 F.3d at 207 (quoting *Scott*, 114 F.3d at 54).

631 F.3d at 207 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)); *accord Shepherd*, 591 F.3d at 452.

In this case, as in their previous complaint, Plaintiffs claim that there was a *de facto* policy, as opposed to "an explicit policy or restriction," which lead to a dangerous condition in the Jail that ultimately resulted in McIlwain's death. (*See* Complaint at 4-17). Plaintiffs allege, for instance, that the individual Defendants engaged in the following pattern of conduct:

> failing to maintain suicide watch on individuals such as Decedent who had earlier demonstrated manifest signs of suicidal tendencies through his attempted suicide in the Jail and/or instituting a training program for inmate protection/suicide prevention, despite an obvious, known, demonstrable and manifest risk presented by Decedent.

(*Id.* at 6). They also allege that the individuals had a "custom of not controlling the dispensation of prescription medication." (*Id.* at 10). Plaintiffs contend further that Defendants routinely "ignor[ed] and neglect[ed] the needs of the mentally ill." (*Id.*). In an attempt to correct the deficiencies in the Third Amended Complaint, Plaintiffs repeat many of the allegations in that earlier pleading, and add some new allegations, as well. (Motion at 21-32). As a result, to the extent that any of Plaintiffs' allegations are identical to those previously dismissed from the earlier complaints, the court need not revisit them, on an individual basis, in this memorandum. (*See id.* at 15, 20).

Plaintiffs' latest complaint does, however, contain several allegations that were not present in earlier pleadings. For example, in regard to Defendants' purported knowledge that McIlwain was a suicide risk, Plaintiffs now claim that the decedent wrote letters to family and friends that made "references to suicide," and that those letters were "[presumably] censored and opened by a [jail] employee." (Response at 4). They also allege that, after he cut his wrists, McIlwain told his girlfriend, Tarra Nicole Rice ("Rice"), that "he had been called into the office of Defendant Bartley

who advised him to never [sic] try committing suicide again." (Complaint at 5, 8). Plaintiffs further state that,

> Approximately two weeks after the incident, Donald and Sherry McIlwain visited Decedent at the jail and saw the gauze that was on his wrists and observed the swelling and scabbing over associated with the suicide attempt when McIlwain removed the gauze and showed them.

(*Id*. at 5). And Plaintiffs now contend that Bartley "knew of the gauze on [McIlwain's] wrists." (*Id*. at 6). Plaintiffs claim that, as a whole, these allegations show that Defendants knew or should have been aware that there was a risk that McIlwain would kill himself. (*See id*.).

In other cases involving a jail suicide, however, courts in this circuit have made clear that "the correct legal standard is not whether the jail officers 'knew or should have known'" of a suicide risk, but "whether they had gained *actual knowledge* of the substantial risk of suicide and responded with deliberate indifference." *Hare*, 74 F.3d at 650 (emphasis added); *accord Matis ex rel. Wajda v. Joseph*, 2007 WL 183069, at *3 (E.D. La. 2007); *Posey v. Southwestern Bell Tel. L.P.*, 430 F. Supp. 2d 616, 622 (N.D. Tex. 2006). In this case, Plaintiffs' new allegations, even if accepted as true, do not show that Defendants had "actual knowledge" that there was a substantial risk of suicide. *See Hare*, 74 F.3d at 650. First, none of Plaintiffs' allegations shows that Defendants knew that McIlwain had, in fact, attempted suicide. (*See* Motion at 22). Instead, at best, they show that the Decedent was treated for cuts on his wrists, and that he made "references to suicide" to Rice, his friends, and his family. Also, notably, Plaintiffs do not allege that, during the two-month period between the alleged wrist cutting and his suicide, McIlwain made any further attempt to harm himself, or told any Defendant that he was contemplating suicide. (*See id*. at 21-24). Further, in their most recent Complaint, Plaintiffs omitted two previous allegations, namely, that McIlwain

attempted to hang himself during his initial days at the Jail, and that he, himself, had "advised his parents of his discussion of this matter with Defendant Bartlett." (Motion at 21; Third Amended Complaint at 6). Clearly, Plaintiffs' case is weaker in the absence of allegations of a prior hanging attempt by McIlwain, and of a direct communication between the Decedent and his family. In short, Plaintiffs have not supported their contention that the individual Defendants had actual knowledge of a substantial risk that McIlwain would attempt suicide.

Another of Plaintiffs' new allegations is a mere comment that McIlwain's "physical ability to hang himself is questionable due to his impaired state and due to the fact that his body was found in a suspicious/questionable position" in his cell. (Complaint at 4-5; Motion at 20-21). In this case, given that both autopsies concluded that the young man had hung himself, and in the absence of any supporting allegations of fact, this is no more than speculation that McIlwain may not have committed suicide after all. (*See id.*).

Plaintiffs have also added an allegation that McIlwain suffered from a seizure earlier on the date of his death, but that Defendants did not "force him" to go to the hospital. (Complaint at 14-16). Plaintiffs contend, specifically, as follows:

> Defendants failed to order that he be transported to a hospital for treatment and Decedent allegedly refused treatment from paramedics, an option that if true, Plaintiffs allege should not have been given to an individual showing symptoms of a seizure. In addition, Plaintiffs allege that this response seems an unlikely one from an inmate/detainee in solitary confinement.

(*Id.*). Plaintiffs claim that Defendants should have had a policy or procedure in place that "would have required the mandatory evacuation of Decedent to a medical care facility." (*Id.* at 15). However, they cite no facts in support of this claim. Plaintiffs allege that McIlwain informed a fellow inmate of the seizure, and asked him to notify his family that he was "ok." (*Id.*). But even

accepting this allegation as true, it does not appear to have any connection to his death and, in fact, suggests that McIlwain felt "ok" at the time, rather than suicidal.

Plaintiffs make a further recent allegation, that Broderick Fountain ("Fountain"), a fellow inmate, observed that "inmates/detainees [were allowed to] assist medical personnel with the dispensing of medications." (*Id.* at 11). Pointing, in part, to Fountain's alleged observations, Plaintiffs argue that "[t]he dispensation [of medication] was lacidasical [sic] and indifferent showing a lack of training." (*Id.*). However, Plaintiffs do not name any of the "medical personnel" involved, or provide any specific details that might support a claim that Defendants failed to administer medication properly. What's more, Plaintiffs do not allege that Fountain observed an improper administration of medication to McIlwain. (*See id.*; Motion at 28). Clearly, these recent allegations do not lend additional support to Plaintiffs' claims.

Finally, Plaintiffs now allege that the individual Defendants imposed unconstitutional conditions of confinement by permitting the Jail to remain understaffed, and by failing to keep adequate records. (Complaint at 6-14). In fact, Plaintiffs question the accuracy of the records that were kept, and make vague allegations that many records that would be relevant to this case were altered or destroyed. (*Id.* at 6, 9-10). Plaintiffs point to the fact that the Jail lost its certification on July 14, 2009, as further proof that Defendants were engaged in a pattern of conduct "'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials.'" (*Id.* at 13). *Shepherd*, 591 F.3d at 452 (quoting *Hare*, 74 F.3d at 645). Again, however, Plaintiffs have done no more than make conclusory, unsubstantiated statements of questionable relevance to their underlying claims.

Here, then, taking the facts alleged as true, Plaintiffs have once again failed to state a claim

14

based on "conditions of confinement." Instead, at best, the facts alleged suggest the mere possibility that the individual Defendants were aware that McIlwain was at risk of committing suicide, but took no measures to prevent it, and that he had taken an excessive amount of medication before his death. (*See* Complaint at 4-17). Plaintiffs have not made any allegations that, if true, would support their claims as a matter of fact. In short, none of Plaintiffs' allegations states a claim, that is plausible on its face, that McIlwain was subjected to unconstitutional conditions of confinement. *See Iqbal*, 129 S. Ct. at 1949. For that reason, Plaintiffs have failed to plead sufficient facts from which the court can "draw the reasonable inference that" each of these Defendants violated McIlwain's Due Process rights through the conditions of his confinement. *See id.* Not only are Plaintiffs' allegations lacking in detail, but they point only to isolated events during McIlwain's confinement that may have contributed to his suicide. (*See* Complaint at 4-14). "[I]solated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Shepherd*, 591 F.3d at 454. The facts, as alleged by Plaintiffs, do not state a claim that either an explicit policy or a *de facto* policy resulted in unconstitutional conditions of confinement. *See id.* at 452 (quoting *Hare*, 74 F.3d at 645); *Scott*, 114 F.3d at 53 n.2. Because Plaintiffs have not adequately pleaded a "conditions of confinement" claim, they cannot avoid the bar of the qualified immunity defense. *See al-Kidd*, 131 S. Ct. at 2080; *Jennings*, 644 F.3d at 300; *see also Shepherd*, 591 F.3d at 452.

### *Episodic Acts or Omissions*

Plaintiffs also appear to allege that Defendants violated McIlwain's constitutional rights through "episodic acts or omissions." (*See* Complaint at 4-17; Motion at 18-20). In *Shepherd*, the Fifth Circuit remarked that "a plaintiff's claim, properly characterized, faults specific jail officials

15

for their acts or omissions, because the plaintiff cannot establish the existence of an officially sanctioned unlawful condition." 591 F.3d at 452. The *Shepherd* court stated that,

> [i]n these cases, "an actor usually is interposed between the detainee and the municipality, such that the detainee complains first of a particular act of, or omission by, the actor and then points derivatively to a policy, custom, or rule (or lack thereof) of the municipality that permitted or caused the act or omission."

*Id.* (quoting *Scott*, 114 F.3d at 53). The Fifth Circuit held that, in these "specific acts or omissions" cases, "[b]ecause the focus of the claim is one individual's misconduct, the detainee is required to prove intent—specifically, that one or more jail officials 'acted or failed to act with deliberate indifference to the detainee's needs.'" *Id.* (quoting *Hare*, 74 F.3d at 648).

In this case, Plaintiffs' claims appear to focus on purported misconduct by select individuals, which allegedly resulted in a violation of McIlwain's Fourteenth Amendment due process rights. (*See* Complaint at 4-17). However, as detailed earlier, Plaintiffs have failed to plead "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *See Iqbal*, 129 S. Ct. at 1949; *Twombly*, 550 U.S. at 556. In particular, Plaintiffs have not adequately alleged that Defendants had "actual knowledge of the substantial risk of suicide," as required for a successful claim. *See Hare*, 74 F.3d at 650. As a result, they have not stated a claim that the individual Defendants violated McIlwain's constitutional rights, and, so, have not rebutted the assertion of qualified immunity. *See id.*; *Pearson*, 555 U.S. at 231; *Jennings*, 644 F.3d at 300.

Further, even if the facts alleged appeared to support their "episodic act or omission" claim, Plaintiffs would have to show, as well, that the individuals acted with "deliberate indifference." *See Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011). It is beyond dispute that the Fourteenth

16

Amendment "requires that state officials not disregard the 'basic human needs' of pretrial detainees, including medical care." *Jennings*, 644 F.3d at 300 (quoting *Hare*, 74 F.3d at 650). It is also well settled that a government official "violates this right when [he] responds to a detainee's serious medical needs with deliberate indifference." *Id.*; *accord Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010); *Hare*, 74 F.3d at 647-48. A finding of "deliberate indifference," however, requires a showing of "a state of mind more blameworthy than negligence." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In fact, to show "deliberate indifference," a party must establish the following:

> (i) that the individual had "'subjective knowledge of facts from which an inference of substantial risk of serious harm could be drawn'";
>
> (ii) that the individual "'actually drew that inference'"; and
>
> (iii) that the individual's "response to the risk indicates that he 'subjectively intended that harm to occur.'"

*Brown*, 663 F.3d at 249 (quoting *Tamez v. Manthey*, 589 F.3d 764, 769-70 (5th Cir. 2009)); *see Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002) (citing *Farmer*, 511 U.S. at 837); *Hare*, 74 F.3d at 648-49.

In this case, Plaintiffs claim that the individual Defendants acted, or failed to act, with deliberate indifference to the risk that McIlwain might commit suicide. (Complaint at 4-12). They fail, however, to support that claim. First, Plaintiffs frame most of their allegations against "Defendants" as a group, rather than stating specific facts that are attributable to each individual. "Deliberate indifference," however, cannot be shown through the actions of the cumulative group. *See Lawson v. Dallas Cty.*, 286 F.3d 257, 262 (5th Cir. 2002); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999). Instead, each named member of that group must be shown to have acted,

independently, with deliberate indifference. *See id.*; *see also Calhoun*, 312 F.3d at 734 (a claim of

deliberate indifference requires a showing that a particular official was aware that the plaintiff was

at risk of serious harm). In this case, in the few instances in which Plaintiffs refer to an official by

name, they state broadly that the individual was responsible for ensuring the safety and well being

of inmates. (*See* Complaint at 4-12). But they never allege facts that, if true, make a plausible case

that any particular official knew of, and disregarded, the risk that McIlwain might commit suicide.

*See Iqbal*, 129 S. Ct. at 1949; *Stewart*, 174 F.3d at 537; *Hare*, 74 F.3d at 650. Because Plaintiffs

have not alleged facts with respect to each specific individual, then, they have not stated a claim that

any of them acted with deliberate indifference. *See Lawson*, 286 F.3d at 262 (citing *Stewart*, 174

F.3d at 537).

Likewise, as detailed earlier, Plaintiffs have not set out facts which suggest that McIlwain's

alleged attempts at suicide were specifically known to the individual Defendants, or that they knew

that there was a substantial risk that he would attempt to take his life. (*See* Complaint at 5-6).

Instead, they ask the court to infer that Defendants were aware that McIlwain was at risk from such

allegations as that McIlwain told Rice that Bartley had advised him never to "try committing suicide

again," and that the Decedent had his wrists wrapped in gauze two months before his death. (*See

id.* at 5-8). Clearly, none of these allegations is sufficient to show that any one of the individually

named Defendants actually knew that McIlwain was a suicide risk, but "responded with deliberate

indifference." *See Hare*, 74 F.3d at 650.

Plaintiffs further argue that "evidence of this [attempted suicide by wrist cutting] was noted

on the [second] autopsy." (*See id.*; M&R at 5). However, they do not show how such a finding

supports their claim that Defendants acted with deliberate indifference while McIlwain was still

18

alive. *See Calhoun*, 312 F.3d at 734. And, although they claim that a high level of sertraline was found in McIlwain's bloodstream after his death, Plaintiffs have not alleged any facts to show that the individual Defendants were aware of a risk of harm to McIlwain. (*See* Complaint at 4-17). In fact, they do not even allege that any of these Defendants distributed the medication to McIlwain. (Motion at 20-32). Nor do they contend that any of these individuals knew of a risk that was posed by dispensing sertraline. (*Id.*). In addition, they have not pleaded any facts from which any of the officials could have drawn an inference that there was a risk that McIlwain would receive excessive medication. (*Id.*). In fact, Plaintiffs pleaded no facts that show that the individual Defendants were aware that McIlwain had any serious mental health problems. (*Id.*).

In short, nothing in the Complaint contains "allegations of fact," which "focus[] specifically on the conduct of the individual," to suggest that each of these Defendants acted with deliberate indifference in the matter of McIlwain's death. *See Farmer*, 511 U.S. at 835; *Reyes*, 168 F.3d at 161. Indeed, the Fifth Circuit has stated that, "although inadequate medical treatment may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not." *Stewart*, 174 F.3d at 534. Absent a showing of Defendants' deliberate indifference, Plaintiffs simply have no claim that the individuals violated McIlwain's constitutional rights. *See Shepherd*, 591 F.3d at 452; *Hare*, 74 F.3d at 650. Because Plaintiffs have not stated a claim for a constitutional violation, the individuals are entitled to protection from suit under the doctrine of qualified immunity. *See al-Kidd*, 131 S. Ct. at 2080; *Jennings*, 644 F.3d at 300.

### *Claims against San Jacinto County*

San Jacinto County now joins the individual Defendants in asserting that this case should be dismissed for failure to state a claim. (Motion at 32-33; *see* Complaint at 4-19). In their complaint,

19

Plaintiffs allege that the County is liable under § 1983 on the same grounds as the individual Defendants. (*Id.* at 4-17). But it is well-established that a local government agency cannot be held liable for claims brought pursuant to § 1983, under a theory of *respondeat superior*. *See Monell v. Department of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Instead, plaintiffs seeking relief under § 1983 must show "that there was either an official policy or an unofficial custom, adopted by the municipality, that was the moving force behind the claimed constitutional violation." *Duvall*, 631 F.3d at 209 (citing *Monell*, 436 U.S. at 694); *see Cox v. City of Dallas, Tex.*, 430 F.3d 734, 748-49 (5th Cir. 2005) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). The Fifth Circuit has held that, typically, an "official policy" is either one of the following:

> 1.    A policy statement, ordinance, regulation, or decision that is officially promulgated by the local governmental unit's law making officers or by an official to whom the lawmakers have delegated policy making authority;
>
> or
>
> 2.    A persistent, widespread practice of local officials or local government employees, which although not authorized by officially adopted and promulgated policy is so common and well settled as to constitute a custom that fairly represents local government policy.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984); *see Cox*, 430 F.3d at 748; *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002); *Brown v. Bryan Cnty.*, 219 F.3d 450, 457 (5th Cir. 2000). In a recent case, the Fifth Circuit held that a showing of official actions that "are 'sufficiently extended or pervasive . . . to prove an intended condition or practice'" is equivalent to a showing of the second consideration. *Duvall*, 430 F.3d 208 (quoting *Hare*, 74 F.3d at 645). On the other hand, courts have held that isolated events are generally insufficient to be "'the persistent, often repeated constant violations that constitute custom and policy as required for municipal section

20

2c019905cd04214f

1983 liability.'" *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 437 (5th Cir.

2008) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995)); *see Burge v.*

*Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

In this case, Plaintiffs have failed to plead facts that are sufficient to establish any

constitutional violations on the part of the individual Defendants. Because Plaintiffs' claims under

§ 1983 against the County are the same as those against the individual Defendants, they suffer from

the same pleading deficiencies. In particular, Plaintiffs have failed to allege facts to show the

existence of a policy, custom or widespread practice which is necessary to hold the County liable

under *Monell*. Nor have they pleaded facts that demonstrate an unconstitutional policy or decision

that was made "by an official to whom lawmakers have delegated policy-making authority." *Brown*,

219 F.3d at 457. As a result, Plaintiffs have failed to state a claim under § 1983 against San Jacinto

County, and dismissal of those claims is appropriate.

Finally, Plaintiffs bring state law claims against the County for wrongful death, pain and

suffering, and mental anguish, and to recover funeral expenses. (Complaint at 17-19). However,

in response to the motion to dismiss, Plaintiffs do not discuss their state law claims. (*See* Response

at 5-16). The court previously dismissed these claims against the individual Defendants. (*See*

Docket Entry #29). Under these circumstances, Plaintiffs appear to have abandoned their state law

claims against the County. Further, the state law claims are based on Defendants' alleged failure to

"place Decedent on suicide watch despite a known propensity to commit suicide," to regularly

observe inmates, to train employees, and to carefully administer medication. (Complaint at 17-18).

As the court has already found, however, Plaintiffs have not pleaded more than conclusory and

unsubstantiated allegations on such matters. Plaintiffs further allege that the County is liable "[i]n

21

failing to maintain certification of the Jail." (*Id*. at 17). However, because the "decertification" occurred after McIlwain's death, it does not support Plaintiffs' state law claims. For these reasons, Plaintiffs have failed to state a claim against San Jacinto County under federal and state law, and those claims are subject to dismissal.

In sum, Plaintiffs' Fourth Amended Complaint should be dismissed, in its entirety, for failure to state a claim. Plaintiffs' request to dismiss Burchett and Donnelly as Defendants to this action should be granted. As a final matter, the court finds no reason to grant leave to amend, because Plaintiffs have had four opportunities to plead their case, and have been unable to do so. *See United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 404 (5th Cir. 2004). For these reasons, the court grants Defendants' motion to dismiss for failure to state a claim, and dismisses this case with prejudice to a refiling.

**Conclusion**

Accordingly, it is **ORDERED** that Defendants' motion to dismiss is **GRANTED**, that Plaintiffs' voluntary dismissal of their claims against Defendants Burchett and Donnelly is **GRANTED**, and that this case is **DISMISSED**, with prejudice.

This is a **FINAL JUDGMENT**.

The Clerk of the Court shall send copies of the memorandum and order to the respective parties.

**SIGNED** at Houston, Texas, this 26th day of October, 2012.

_____
**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**